**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

**NITRO CONSTRUCTION SERVICES, INC.
D/B/A NITRO ELECTRIC COMPANY, INC.
AND NITRO MECHANICAL SERVICES,**
a West Virginia corporation,

          **Plaintiff,**

vs.                                                        Civil Action No. 3:18-cv-01405

**STEVENSON CRANE SERVICE, INC.,**
an Illinois corporation; and
**HOIST LIFTRUCK MFG., INC.,**
an Illinois corporation.

          **Defendants.**

## COMPLAINT

Plaintiff Nitro Construction Services, Inc. d/b/a Nitro Electric Company, Inc. and Nitro Mechanical Services ("Plaintiff") complains against Defendants as follows:

## PARTIES

1. Plaintiff is a West Virginia corporation doing business in Putnam County, West Virginia.

2. Defendant Stevenson Crane Service, Inc. ("Stevenson Crane") is an Illinois corporation doing business in Putnam County, West Virginia.

3. Defendant Hoist Liftruck Mfg., Inc. ("Hoist") is an Illinois corporation doing business in Putnam County, West Virginia.

## JURISDICTION AND VENUE

4. Jurisdiction in this case is based on diversity of citizenship of the parties and the amount in controversy pursuant to 28 U.S.C. § 1332.

5. The parties in this case are completely diverse.

6. Plaintiff is a West Virginia corporation and its principal place of business is in Nitro, West Virginia. Accordingly, Plaintiff is a citizen of West Virginia. *See* 28 U.S.C. § 1332(c).

7. Defendant Stevenson Crane is an Illinois corporation and its principal place of business is in Illinois. Accordingly, Stevenson Crane is a citizen of Illinois. *See* 28 U.S.C. § 1332(c).

8. Defendant Hoist is an Illinois corporation and its principal place of business is in Indiana. Accordingly, Hoist is a citizen of Illinois and Indiana. *See* 28 U.S.C. § 1332(c).

9. The matter in controversy exceeds, exclusive of interests and costs, the sum of $75,000 pursuant to 28 U.S.C. § 1332.

10. Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because Defendants routinely transact business in the State of West Virginia and in counties within this Court's district and division, including Putnam County, and "a substantial part of the events or omissions giving rise to the claim occurred" in this district. *See* 28 U.S.C. § 1391(b).

11. Plaintiff has performed all conditions precedent prior to bringing this action.

## **FACTS**

12. As part of its core business, Plaintiff is required to lift heavy (and often very expensive) equipment and other items.

13. To avoid substantial rental costs and thus make itself more competitive, Plaintiff sought to purchase a specialized forklift designed to lift extremely heavy loads.

14. Plaintiff communicated with dealer Stevenson Crane about purchasing a new Hoist forklift that would meet Plaintiff's specific needs.

15. At all times material hereto, it was agreed and understood that the forklift would be

used to lift heavy equipment and other items as necessary for Plaintiff's particular business.

16. On February 17, 2017, Stevenson Crane sent to Plaintiff a purchase quote, which stated it was for the sale of a "2017 Hoist FR-40/60 fork lift" (the "Forklift").

17. Although Stevenson Crane had represented that the Forklift was new and would be covered by the manufacturer's warranty, the quote stated that the Forklift was being "sold As Is with no warranty express or implied."

18. On February 21, 2017, Plaintiff requested that the purchase quote be revised to state that the Forklift was new and to reference the manufacturer's standard one-year warranty.

19. On February 24, 2017, Stevenson Crane sent Plaintiff a revised purchase quote that was executed by Stevenson Crane.

20. The revised purchase quote stated that it was for the sale of a "*new* 2017 Hoist FR-40/60 fork lift truck" equipped with various items, including an onboard computer, extra set of forks, hydac gauge, and a "Manufacturers Standard 1 year Warranty." Stevenson Crane also told Plaintiff that it had notified Hoist of the pending order and that Hoist was holding its next production slot for the Forklift.

21. On February 28, 2017, Plaintiff executed the revised purchase quote (the "Purchase Quote").

22. In total, Plaintiff paid approximately $270,300 for the Forklift.

23. In March 2017, the Forklift was delivered to Putnam County, West Virginia.

24. Plaintiff first used the Forklift on June 20, 2017, and it almost immediately experienced significant mechanical difficulties.

25. These issues included, without limitation, multiple leaks and the Forklift inexplicably (and dangerously) turning by itself.

26. As a result of these issues, Plaintiff incurred significant repair and rental costs so that it could complete an ongoing construction project.

27. Flushing of the Forklift's hydraulic system revealed severe contamination, including wire, welding slag, metal pieces, and what appeared to be tape.

28. This contamination clearly occurred during the manufacturing process given the type of material extracted and the fact that it was present shortly after Plaintiff first used the Forklift.

29. Plaintiff promptly notified Stevenson Crane on June 20, 2017 concerning these troubling issues and inquired about the process of getting these issues fixed. Plaintiff also asked Stevenson Crane if it should contact Hoist directly.

30. On July 10, 2017, Plaintiff also notified Hoist of these issues.

31. On August 2, 2017, Plaintiff contacted Hoist again about the aforementioned issues.

32. On that same day, Plaintiff also contacted Stevenson Crane and requested a copy of the manufacturer's warranty.

33. Stevenson Crane provided a copy of the manufacturer's warranty statement to Plaintiff and said that it would contact Hoist right away concerning the issues.

34. On August 2, 2017, a factory representative for Hoist contacted Plaintiff. The factory representative stated that he "worked alongside" the retail sales coordinator for Stevenson Crane, and requested that Plaintiff participate in a teleconference with Hoist concerning the issues with the Forklift.

35. On August 3, 2017, representatives for Plaintiff, Hoist, and a company that performed the initial repair work on the Forklift participated in a teleconference concerning the issues with the Forklift.

36. On August 4, 2017, Hoist fraudulently represented to Plaintiff that "an entire team" would completely review the Forklift to resolve any issues with the unit.

37. Hoist had the Forklift in its possession for approximately thirty days, during which time Plaintiff incurred significant rental costs.

38. Despite being in possession of the Forklift for an extended period, Hoist only replaced the steering unit and flushed the hydraulic system for two hours—hardly the work of "an entire team."

39. The Forklift was returned to Plaintiff on or about September 7, 2017.

40. After these subpar repairs, the Forklift's mechanical issues continued.

41. On November 16, 2017, Plaintiff contacted Hoist again about these issues.

42. After numerous communications between the parties, Hoist, on its own behalf and in concert with Stevenson Crane, offered to "restart" and extend the warranty on the Forklift for three years.

43. Specifically, the warranty included coverage for the hydraulic system including all hydraulic components.

44. In or around February 2018, instead of revoking acceptance of the Forklift at that time, Plaintiff relied upon Defendants' representations regarding future repairs, and agreed to the warranty extension because it believed that they would honor this warranty by repairing and replacing any hydraulic components as provided if further issues with the hydraulic system occurred.

45. On April 12, 2018, the Forklift was yet again taken out of service due to steering issues.

46. Again, Plaintiff had to use other trucks to complete its work and incurred additional

costs.

47. Subsequent inspection revealed that the hydraulic system was still contaminated.

48. Plaintiff contacted Hoist again concerning these issues.

49. On May 8, 2018, a Hoist technician travelled to West Virginia and inspected the Forklift.

50. During this inspection, the filter was cleaned and the orbital replaced.

51. Still, after Plaintiff drove the Forklift for only five minutes, it was full of contamination.

52. Ultimately, the Forklift was put out of service due to the steering problems and the forks moving on their own due to the contamination in the valves.

53. Hoist requested that the Forklift be returned to its factory for further repairs.

54. On May 10, 2018, Hoist, on its own behalf and in concert with Stevenson Crane, falsely represented that it would replace every hydraulic component and every single hose on the Forklift to eliminate any possibility of residual debris in the hydraulic system.

55. Prior to Hoist picking up the Forklift for repairs, on May 17, 2018, Plaintiff applied UV paint to the hydraulic and other components that Defendants promised to replace.

56. On May 24, 2018, Hoist picked up the Forklift.

57. Approximately two *months* later, Hoist delivered the Forklift to Plaintiff on July 20, 2018.

58. Shortly thereafter, Plaintiff examined the Forklift with UV light, which revealed UV paint on the very parts that Defendants fraudulently represented they would replace, including the main hydraulic pump and various other parts.

59. On August 7, 2018, further confirming its fraudulent conduct, Hoist again falsely

stated that various parts had been replaced, and that the hydraulic system had been flushed multiple times with "no sign of even the smallest contamination."

60. As discussed above, the parts at issue clearly had not been replaced, and upon return, the Forklift was leaking fluid, which would have been discovered if the system had been flushed for an extended period.

61. On September 11, 2018, Plaintiff sent Hoist and Stevenson Crane a written notice of revocation of acceptance and violations of various statutes, including the West Virginia Consumer Credit and Protection Act (the "Notice"), via certified mail, return receipt requested.

62. Despite receipt of the Notice by each of them, and being provided more than the required time to respond to the Notice, Defendants failed to seasonably cure the known defects in the Forklift.

63. The value of the Forklift has been substantially impaired.

64. As a direct and proximate result of the Forklift's nonconformity and defects, Defendants' breach of warranty, breach of contract, fraudulent representations, and other conduct of Defendants, Plaintiff has suffered the loss of full use of the Forklift and have incurred significant repair and rental costs and other incidental and consequential damages.

## COUNT I – REVOCATION OF CONTRACT FOR SALE
### (Hoist and Stevenson Crane)

65. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 of its Complaint as if set forth in full herein.

66. On or about February 28, 2017, Plaintiff agreed to purchase, and Stevenson Crane agreed to sell, the Forklift.

67. Stevenson Crane was acting individually and as an agent of Hoist when it entered into the sales transaction with Plaintiff.

68. Plaintiff paid approximately $270,300 for the Forklift.

69. Plaintiff accepted the Forklift without discovery of all of the nonconformities and defects in the Forklift.

70. The Forklift suffers from severe mechanical issues, which include without limitation multiple leaks, steering problems, severe contamination of the Forklift's hydraulic system, the Forklift inexplicably turning by itself, and the forks moving on their own.

71. These mechanical issues were difficult to discover upon delivery of the Forklift because the source of these issues appears to be contamination in the Forklift's internal hydraulic system.

72. Due to these mechanical issues and the safety concerns raised by them, the value of the Forklift has been substantially impaired.

73. Plaintiff has given Defendants multiple opportunities to repair the Forklift and to bring it in conformity with the specifications in the Purchase Quote and the representations made by Defendants.

74. Defendants have failed to seasonably cure these material defects and nonconformities and have failed to make the equipment perform as represented, specified and guaranteed.

75. Plaintiff has incurred substantial rental, repair, and other incidental and consequential costs due to the nonconformity of and material defects in the Forklift.

76. Accordingly, Plaintiff has given notice of revocation of acceptance of goods pursuant to Sections 2-602 and 2-608 of the Uniform Commercial Code ("UCC") and have demanded that Defendants pick up the Forklift, refund the amount Plaintiff paid for the Forklift, and pay Plaintiff such other costs, expenses and damages Plaintiff incurred as a direct and

proximate result of the Forklift's nonconformities and defects.

77. Defendants have refused to accept Plaintiff's revocation of acceptance, to take action to take back the Forklift, refund the purchase price, and to pay to Plaintiff other costs and expenses that it is entitled to as a result of Defendants' violations of Article 2 of the UCC.

78. Wherefore, Plaintiff, having demonstrated and established a proper and seasonable revocation of acceptance and rejection of the Forklift, is entitled to all relief available under Article 2 of UCC, the common law, and other applicable statutes, laws, and regulations.

### COUNT II – BREACH OF EXPRESS WARRANTIES
### (Hoist and Stevenson Crane)

79. Plaintiff realleges and incorporates by reference paragraphs 1 through 78 of its Complaint as if set forth in full herein.

80. In alternative to its claim for revocation of a contract for sale, Plaintiff alleges a claim for breach of express warranties.

81. Prior to the sale of the Forklift to Plaintiff, Defendants expressly warranted that the Forklift would be new, and thus free of defects, and that the Forklift would be covered by Hoist's standard 1-year manufacturer warranty.

82. The Purchase Quote provided that Plaintiff was purchasing a "new 2017 Hoist FR-40/60 fork lift truck" and incorporated by reference the "Manufacturers Standard 1 year Warranty."

83. On or about February 28, 2017, Plaintiff and Stevenson Crane entered into the Purchase Quote, which included as a basis of the bargain that the Forklift was new and would be covered by Hoist's standard 1-year warranty.

84. Upon information and belief, Stevenson Crane was acting as an agent of Hoist in providing the manufacturer's warranty to Plaintiff.

9

85. In or around February 2018, Hoist, acting on its own behalf and in concert with Stevenson Crane, restarted and extended the warranty for another three years.

86. The Forklift has severe mechanical issues, which include without limitation multiple leaks, steering problems, severe contamination of the Forklift's hydraulic system, the Forklift inexplicably turning by itself, and the forks moving on their own.

87. Upon information and belief, these mechanical issues were caused by defects in the manufacturing process.

88. Defendants have made multiple unsuccessful attempts to repair the Forklift during the pertinent warranty periods, and have made knowing misrepresentations regarding repair work that was purportedly done as described above.

89. These defects and Defendants' failed attempts at repairing the Forklift constitute a breach of the express warranties made by Defendants.

90. Defendants have been given notice of the breaches of the express warranties and have been given multiple opportunities to cure the warranty problems.

91. Wherefore, as a direct and proximate result of these breaches, Plaintiff has sustained damages as described herein.

### COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Stevenson Crane)

92. Plaintiff realleges and incorporates by reference paragraphs 1 through 91 of its Complaint as if set forth in full herein.

93. In alternative to its claim for revocation of a contract for sale, Plaintiff alleges a claim for breach of the implied warranty of merchantability.

94. On or about February 28, 2017, Plaintiff and Stevenson Crane entered into the Purchase Quote.

95. At all times relevant to this matter, Stevenson Crane was a "merchant" with respect to the Forklift, as that term is defined by the UCC.

96. Accordingly, a warranty that the Forklift would be merchantable was implied in the Purchase Quote.

97. The Forklift has severe mechanical issues, which include without limitation multiple leaks, steering problems, severe contamination of the Forklift's hydraulic system, the Forklift inexplicably turning by itself, and the forks moving on their own.

98. Given the Forklift's dangerous propensity to move on its own and numerous mechanical issues:

   a. The Forklift would not pass without objection in the trade under the Purchase Quote's description; and

   b. The Forklift is not fit for the ordinary purposes for which a forklift is used, including without limitation lifting heavy equipment.

99. Accordingly, Stevenson Crane breached the implied warranty of merchantability in the instant transaction.

100. Stevenson Crane has been given notice of these breaches and has been given multiple opportunities to cure them.

101. Wherefore, as a direct and proximate result of these breaches, Plaintiff has sustained damages as described herein.

### COUNT IV – BREACH OF THE IMPLIED WARRANTY OF FITNESS
### (Stevenson Crane)

102. Plaintiff realleges and incorporates by reference paragraphs 1 through 101 of its Complaint as if set forth in full herein.

103. In alternative to its claim for revocation of a contract for sale, Plaintiff alleges a

claim for breach of the implied warranty of fitness for a particular purpose.

104. At the time of contracting, Stevenson Crane had reason to know that Plaintiff intended to use the Forklift to lift heavy machinery and other equipment and that Plaintiff was relying on Stevenson Crane's skill and/or judgment to provide a forklift suitable for Plaintiff's needs.

105. Accordingly, a warranty that the Forklift was fit for the particular purpose for which it was intended was implied in the Purchase Quote.

106. The Forklift has severe mechanical issues, which include without limitation multiple leaks, steering problems, severe contamination of the Forklift's hydraulic system, the Forklift inexplicably turning by itself, and the forks moving on their own.

107. Upon information and belief, these mechanical issues were caused by defects in the manufacturing process.

108. Accordingly, the Forklift is not fit for the particular purpose for which it was intended, and thus in breach of the implied warranty of fitness.

109. Stevenson Crane has been given notice of these breaches and has been given multiple opportunities to cure them.

110. Wherefore, as a direct and proximate result of these breaches, Plaintiff has sustained damages as described herein.

### COUNT V – FRAUD
### (Hoist and Stevenson Crane)

111. Plaintiff realleges and incorporates by reference paragraphs 1 through 110 of its Complaint as if set forth in full herein.

112. On May 10, 2018, Hoist, on its own behalf and in concert with Stevenson Crane, materially and falsely represented that it would replace every hydraulic component and every

single hose on the Forklift to eliminate any possibility of residual debris in the hydraulic system.

113. At the time Defendants made this false representation, they had no intention of actually performing these repairs.

114. Furthermore, although Stevenson Crane was a party to the May 10, 2018 communication as well as other communications, it did nothing to correct this fraudulent representation or otherwise ensure that the Forklift was properly repaired as promised.

115. In reliance on this fraudulent representation, Plaintiff did not revoke acceptance of the Forklift at that time.

116. Plaintiff was justified in relying upon Defendants' fraudulent representation.

117. Prior to Hoist picking up the Forklift for repairs, on May 17, 2018, Plaintiff applied UV paint to the hydraulic and other components that Defendants promised to replace.

118. On May 24, 2018, Hoist picked up the Forklift.

119. Approximately two months later, Hoist delivered the Forklift to Plaintiff on July 20, 2018.

120. Shortly thereafter, Plaintiff examined the Forklift with UV light, which revealed UV paint on the very parts that Defendants fraudulently represented they would replace, including the main hydraulic pump and various other parts.

121. On August 7, 2018, Hoist again falsely stated that various parts had been replaced, and that the hydraulic system had been flushed multiple times with "no sign of even the smallest contamination."

122. This statement was material and false because, as discussed above, the parts at issue clearly had not been replaced, and upon return, the Forklift was leaking fluid, which would have been discovered if the system had been flushed for an extended period.

123. The August 7, 2018 fraudulent statement further confirmed that Defendants had no intention of replacing every hydraulic component and every single hose on the Forklift as they had represented on May 10, 2018.

124. As a result of Plaintiff's justified reliance on Defendants' fraudulent representations, Plaintiff suffered damages including without limitation, monetary loss, rental and repair costs, and other incidental and consequential damages.

125. Defendants have acted in bad faith, wantonly and/or for oppressive reasons and thus Plaintiff is entitled to an award of attorney's fees.

126. Furthermore, Defendants have acted with actual malice toward Plaintiff and/or a conscious, reckless and outrageous indifference to the rights of others, and thus Plaintiff is entitled to punitive damages.

### COUNT VI – VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
### (Hoist and Stevenson Crane)

127. Plaintiff realleges and incorporates by reference paragraphs 1 through 126 of its Complaint as if set forth in full herein.

128. Defendants have committed *per se* unfair and deceptive acts or practices in the sale and repair of the Forklift, including without limitation the following:

   a. Representing that the Forklift was new when it was in fact in a significantly deteriorated condition in violation of West Virginia Code § 46A-6-104 and § 46A-6-102(7)(F);

   b. Representing that the Forklift was of a particular quality or standard when it was not of said quality or standard in violation of West Virginia Code § 46A-6-104 and § 46A-6-102(7)(G);

    c. Engaging in other conduct which similarly created a likelihood of confusion or of misunderstanding in violation of West Virginia Code § 46A-6-104 and § 46A-6-102(7)(L);

    d. Acting, using or employing deception, fraud, false pretense, false promise, or misrepresentation, or concealing, suppressing, or omitting any material fact in violation of West Virginia Code § 46A-6-104 and § 46A-6-102(7)(M).

2. Defendants' conduct also constitutes general unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-104.

129. Wherefore, Plaintiff is entitled to actual damages pursuant to West Virginia Code § 46A-6-104 and § 46A-6-106.

130. In addition, Defendants have acted in bad faith, wantonly and/or for oppressive reasons and thus Plaintiff is entitled to an award of attorney's fees pursuant to common law and West Virginia Code § 46A-6-104 and § 46A-6-106.

131. Furthermore, Defendants have acted with actual malice toward Plaintiff and/or a conscious, reckless and outrageous indifference to the rights of others, and thus Plaintiff is entitled to punitive damages.

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

1. That, as a result of Plaintiff's valid revocation of acceptance, Plaintiff be awarded:

    a. The amount it paid for the Forklift;

    b. The difference between the amount Plaintiff paid for the Forklift and the market price for a similar forklift at the time Plaintiff learned of the breach; and

    c. Consequential and incidental damages.

2. In the alternative to the relief sought in paragraph 1 above, that in connection with

Defendants' breach of express and implied warranties, Plaintiff be awarded:

    a. The difference between the value of the Forklift as warranted and the value of the Forklift as accepted by Plaintiff; and

    b. Consequential and incidental damages.

3. That Plaintiff be awarded actual damages for violations of the West Virginia Consumer Credit and Protection Act pursuant to West Virginia Code § 46A-6-104 and § 46A-6-106;

4. That Plaintiff be awarded punitive damages against Defendants;

5. That Plaintiff be awarded its costs and attorney's fees pursuant to West Virginia Code § 46A-6-104 and § 46A-6-106, the common law, and the general authority of this Court;

6. That Plaintiff be awarded any and all additional damages against Defendants to which Plaintiff may be entitled;

7. That Plaintiff be awarded prejudgment and postjudgment interest on all of the aforementioned damages; and

8. That Plaintiff be awarded such further and general relief as this Court may deem appropriate.

    **PLAINTIFF DEMANDS A TRIAL BY JURY.**

        **NITRO CONSTRUCTION SERVICES, INC.**
        **D/B/A NITRO ELECTRIC COMPANY, INC.**
        **AND NITRO MECHANICAL SERVICES**

        By Counsel:

        /s/ Benjamin B. Ware
        R. Booth Goodwin (WVSB #7165)
        Benjamin B. Ware (WVSB #10008)
        Shanna L. Brown (WVSB #12516)
        GOODWIN & GOODWIN, LLP

                                                        300 Summers Street, Suite 1500
                                                       Charleston, WV 25301
                                                       rbg@goodwingoodwin.com
                                                       bbw@goodwingoodwin.com
                                                       slb2@goodwingoodwin.com
                                                       P: (304) 346-7000
                                                       F: (304) 344-9692